**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **HASEEB ABDULLAH,** | |
| *Plaintiff/Petitioner,* | |
| vs. | CIVIL ACTION No. 1:20-cv-01245-RP |
| **KEN PAXTON, ET AL.,** | |
| *Defendants/Respondents.* | |

**PLAINTIFF HASEEB ABDULLAH'S AMENDED RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Haseeb Abdullah ("Plaintiff") hereby files his Response in Opposition to Defendants' Amended Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(1) and 12(b)(6). Doc. 26. Plaintiff respectfully requests this Court deny Defendants' Motion in full as set forth below

## I.      Introduction and Procedural and Factual Background

Plaintiff brought his Original Complaint against Defendants Paxton and Hegar, as well as Porter Wilson, the Executive Director of the State of Texas Employee Retirement System ("ERS") and Amy Bishop in her official capacity as Executive Director of the Texas County and District Retirement System ("TCDRS"), asserting that Section 808 of the Texas Government Code ("Section 808") is unlawful and unconstitutional pursuant to federal law, and that its promulgation adversely affects his own vested and ongoing interest in the management of his pension benefits. On March 26, 2021, Defendants filed motions to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Docs. 15, 16. Plaintiff subsequently moved to drop his claims against Defendants Wilson and Bishop. Docs. 18, 19. This Court granted this request, and permitted the remaining Defendants to refile their Motions. Doc. 20.

Plaintiff was employed by the State of Texas from September 2008 until March 2018. During that time, he worked as an attorney for the Texas Department of Public Safety, the Texas Department of Insurance, Division of Workers' Compensation, and the Texas Department of Licensing and Regulation.  Compl., Dkt. 1, at ¶¶ 9-10. During his tenure as a State of Texas employee, Plaintiff made mandatory monthly contributions of a portion of his pre-tax salary to the ERS. *Id.* at ¶¶ 11-12. Employee contributions have risen in recent years in order to maintain the solvency of the ERS pension system. *Id.* at ¶ 13. Although Plaintiff is no longer a State of Texas employee, he is still an ERS member and ERS still maintains and oversees his pension benefits. *Id.* at ¶ 14. Now that Plaintiff is an employee of Travis County, a mandatory 7% of Plaintiff's gross salary is deducted each pay period and paid into the TCDRS. *Id.* at ¶ 31. Under this system, an employee fully vests after eight years of service. *Id.*; *see also* TEX. CONST. ART., XVI, § 67(c)(1)(A) (requiring by law that the Texas legislature provide for the creation by a city or county a system of benefits for its employees and officers). Plaintiff, as well as all other similarly situated Texas government employees, relies on ERS and TCDRS to make sound fiduciary decisions with respect to the management of the funds that support his pension benefits.

Section 808 of the Texas Government Code prohibits certain retirement systems, including ERS and TCDRS, from investing in and requires divestment from companies designated by the Comptroller as participating in BDS.[1] Dkt. 1 at ¶¶ 22-23. Section 808 requires that if a company boycotts Israel or otherwise participates in BDS activities, the state governmental entity must "sell, redeem, divest, or withdraw all publicly traded securities of the company." Anti-BDS laws like Section 808 require fiduciaries to examine factors unrelated to financial outcomes in investment

---

[1] Provisions like Section 808 are broadly referred to as "anti-BDS laws," with "BDS" referring to the Palestinian-led peaceful boycott of Israel and Israeli-based products based on Israel's occupation of Palestine and its citizens.

and divestment decisions affecting relevant funds. Those provisions of Section 808 are unconstitutional and harm the interests of Texas employees whose benefits are subject to these provisions. Plaintiff identifies his vested interest in the management of his own pension benefits, to which he has contributed as an employee for the State of Texas and Travis County. This action presents Plaintiff's only avenue to challenge the Texas legislation that harms that interests.

## II.     Legal Standards

### A.     Fed. R. Civ. P. 12(b)(1)

Motions to dismiss under Fed. R. Civ. P. 12(b)(1) challenge a federal court's subject matter jurisdiction over particular claims. Courts consider a "jurisdictional attack before addressing any attack on the merits." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). Courts lack subject matter jurisdiction only where they lack the statutory or constitutional power to adjudicate the matter. *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). Where a defendant "files a Rule 12(b)(1) motion without supporting it with documentary evidence…the trial court must look to the sufficiency of the allegations in the complaint because they are presumed to be true[;] [i]f those jurisdictional allegations support subject matter jurisdiction, the complaint stands." *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

### B.     Fed. R. Civ. P. 12(b)(6)

"[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Amawi v. Pflugerville ISD*, 373 F. Supp. 3d 717, 737 (W.D. Tex. 2019) (internal citations omitted), *vacated and remanded sub nom., Amawi v. Paxton,* 956 F.3d 816 (5th Cir. 2020) (reversed and remanded as moot after amendments to that statute).  In assessing Rule 12(b)(6) motions, courts must "accept all well pleaded facts as true" and view them in the light most favorable to the plaintiff. *United States ex rel. Vavra v. Kellogg, Brown & Root, Inc.,* 727 F.3d 343, 346 (5th Cir. 2013). At this stage, it is not the "plaintiff's burden to prove or plead every element of his claim

in order to withstand dismissal[;]" but instead to plead sufficient facts to "raise a right to relief above the speculative level." *Brown v. Peterson,* Action No. 7:03-cv-0205, 2006 U.S. Dist. LEXIS 4311, at *39 (N.D. Tex. Feb. 3, 2006); *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010). Courts assess whether complaints contains "sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiffs need only allege facts allowing the "court to draw the reasonable inference" that defendants may be liable for the alleged misconduct. *Id.* Dismissal is "only appropriate 'if it is clear that *no* relief could be granted under *any* set of facts that could be proved consistent with the allegations.'" *Richardson v. Tex. Sec'y of State,* No. SA-19-cv-00963-OLG, 2019 U.S. Dist. LEXIS 234207, at *38 n. 19 (W.D. Tex. Dec. 23, 2019) (quoting *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.,* 635 F.3d 1106, 1108 (8th Cir. 2011)).

### III.    Argument

**A.    Sovereign Immunity Does Not Bar Plaintiff's Claim Against Defendant Hegar**

*Ex parte Young* recognizes an important exception to Eleventh Amendment sovereign immunity, when plaintiffs bring suit for prospective relief against state officials who act in violation of federal law. 209 U.S. 123 (1908).[2]   Although Plaintiff's claims brought against Defendant Hegar satisfy each requirement, Defendants nonetheless contend he is immune from suit, claiming no connection to enforcement of Section 808. Defendants rely on *Tex. Democratic Party v. Abbott* as support that this connection requires more than a "general duty to see that the

---

[2] *See also Amawi*, 373 F. Supp. 3d at 760 ("In considering an *Ex parte Young* claim, 'a court need only conduct 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective' ... A "prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies [this] 'straightforward inquiry'"") (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 636, 645 (2002) and *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1977)).

laws of the state are implemented," and that the official must bear statutory responsibility to enforce the challenged law. Doc. 16 at 5 (quoting 961 F.3d 389, 400-01 (5th Cir. 2020)). Defendants overstate the degree of that required connection.  "While the precise scope of the 'some connection' requirement is still unsettled[,]" "[n]either a specific grant of enforcement authority nor a history of enforcement is required to establish a sufficient connection." *Langan v. Abbott,* No. 1:20-CV-275-RP, 2021 U.S. Dist. LEXIS 24083, at *8 (W.D. Tex. Feb. 8, 2021) (citing *Tex. Democratic Party,* 961 F.3d at 400-01). Rather, "[t]here need only be a scintilla of enforcement by the relevant state official for *Ex parte Young* to apply" *Id.* (internal quotations omitted).

Defendants' assertion that "[t]here is no scintilla of affirmative action" required on the part of the Comptroller regarding section 808 contradicts the plain language of the Chapter, which delegates significant authority to the Comptroller. Section 808.051 provides that "(a) [t]he comptroller shall prepare and maintain and provide to each state governmental entity, a list of all companies that boycott Israel[;]" (b) the comptroller shall update the list annually or more often as the comptroller considers necessary…[;] and "(c) the comptroller shall file the list with the presiding officer of each house of the legislature and the attorney general and post the list on a publicly available website." TEX. GOV'T. CODE § 808.051. This provision tasks the Comptroller with the creation, maintenance and publication of the list of companies that boycott Israel, which triggers the investment/divestment decisions forming the subject of this suit. Under Section 808.053(c), if a listed "company ceases boycotting Israel, the comptroller shall remove the company from the list." Removing a company from that list lifts any investment restrictions with it. This squarely qualifies as enforcing and maintaining the provisions of Section 808. *Id.* § 808.053(c). And, under Section 808.056(c), if a state governmental entity intends to cease divestment from a listed company, it must first "provide a written report to the comptroller…setting forth the reason and justification, supported by clear and convincing

evidence." *Id.* § 808.056(c); Doc. 1 at ¶¶ 71, 75, 85. The Comptroller is tasked with creating and promulgating the list of companies that should be divested from on the grounds that they engage in BDS activity, removing the companies if they cease BDS participation, and assessing whether an entity should cease divestment from a company on the list. These acts comprise more than a "scintilla of enforcement" of Section 808; the Comptroller is directly tasked with its enforcement and administration. Cases cited by Defendants do not disrupt this conclusion. Defendants rely on *Mi Familia Vota v. Abbott* for the proposition that the named state official, the secretary of state, lacked a sufficient enforcement connection because "[d]irecting the Secretary not to enforce the electronic-voting devices-only provision in section 43.007 would not afford the Plaintiffs the relief that they seek." Doc. 16 at 5 (citing *Mi Familia Vota v. Abbott,* 977 F.3d 461, 468 (5th Cir. 2020). There, the secretary of state was protected by sovereign immunity because those plaintiffs challenged the constitutionality of the prohibition of the use of paper ballots under a particular law, and the secretary's only relevant duties were to "provide standards for certifying electronic devices" and "exclude counties whose electronic voting devices do not meet certain standards from the Program." *Mi Familia Vota,* 977 F.3d at 468. Any ruling for those plaintiffs would not have resulted in the secretary acting differently. By contrast, here the statute specifically names the Comptroller and tasks him with its administration and enforcement.[3] Immunity is inappropriate.

**B.    Plaintiff Has Standing to Bring this Action**

The "standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication[;]" federal courts must be satisfied that subject matter jurisdiction exists prior to

---

[3] Defendants' reliance on *Langan*, 2021 U.S. Dist. LEXIS 24083, at *8 is similarly misplaced. The *Langam* court evaluated enforcement authority in a situation where "no state official or agency is named in the statute in question."  *Id*.

evaluating the merits of any case. *McClure v. Ashcroft,* 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin,* 422 U.S. 490, 517 (1975)). The Article III standing inquiry involves three primary considerations: (1) the plaintiff must demonstrate that he has suffered an injury that is both concrete and particularized and actual or imminent (injury in fact); (2) that injury must be fairly traceable to the challenged conduct (causation); and (3) the injury must be is capable of being redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC) Inc.,* 528 U.S. 167, 180-81 (2000); *see also Lewis v. Casey,* 518 U.S. 343, 357 (1996) (explaining that standing must be satisfied as to each particular injury). Allegations of injury are liberally construed and "general factual allegations of injury resulting from the defendant's conduct may suffice." *La. State Conf. of the NAACP v. Louisiana,* No. 19-479-JWD-SDJ, 2020 U.S. Dist. LEXIS 246999, at *59-60 (M.D. La. June 26, 2020). "[O]n a motion to dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*. Plaintiffs must demonstrate that the injuries alleged are "more than a generalized grievance" and that the plaintiff suffered the harm alleged. *See Valley Forge Christian Coll. v. Ams United for Separation of Church & State, Inc.,* 454 U.S. 464, 474 (1982). Defendants assert that Plaintiff "has not alleged any injury in fact" nor would any be redressable here. Doc. 16 at 6-14. That narrow inquiry misstates the injury set forth by Plaintiff and his requested relief.

    *1. Plaintiff has standing to bring claims predicated on the impact that Section 808 has on the administration of his pension benefits.*

    Defendants argue that "the sole source of any 'injury'" alleged in Plaintiff's Complaint is "that ERS divested itself from DNB ASA, a private company." Doc. 16 at 8.[4] This mischaracterizes and

---

[4] In Defendants' original Motion to Dismiss, they asserted that Plaintiff lacks standing because "Plaintiff asserts his sole source of any 'injury' is that ERS divested itself from DNB ASA a private Company[,]" and that Plaintiff cannot allege an alteration in his retirement pay as a result of that specific divestment. Doc. 16 at 8. Plaintiff clarified in his original Response that this was a misinterpretation of the harm alleged, and that he references DNB ASA merely as an example of

inaccurately narrows the nature of Plaintiff's stated claims. Plaintiff points to divestment from DNB ASA as one example of the way Section 808's unlawful requirements operate to effectuate divestment decisions that go against sound financial decision-making and the advice of experts. Doc. 1 at ¶¶ 26-28. Plaintiff does <u>not</u> bring this claim specifically to obligate ERS or TCDRS to re-invest or remain invested in DNB ASA. Rather, Plaintiff brings broader constitutional claims based on the harm that the unconstitutional considerations mandated by Section 808 can and will have on the administration of the relevant funds. Doc. 1 at 18, Relief Requested. The source of Plaintiff's injury is the promulgation of unlawful legislation that improperly impacts his financial interests. Although divestment from DNB ASA demonstrates the reality of that harm, Plaintiff's standing to bring his claims and the sufficiency of his allegations do not turn on that, or any, one asset. As discussed below, Defendants' characterizations that "Plaintiff…has not clearly alleged facts of any concrete injury he has suffered as a result of the divestment from DNB ASA[,]" and he "has made no assertion that the ERS pension is worth less or his vested financial interest has been compromised or harmed as a result" of that divestment miss the point. And the kind of detailed analysis of the dollar-amount framework that Defendants propose better suits discovery, not this early stage of litigation.[5]

Defendants also assert that Plaintiff's standing fails because he has not alleged a "tangible" financial loss. As noted above, Plaintiff does not premise his claims on a past financial harm, because his injury is ongoing and coterminous with the existence and application of Section 808. Doc. 1 at ¶¶ 42-44. And, the law does not require that individuals set forth a dollar-amount

---

Plaintiff's injury. In Defendants' Amended Motion to Dismiss, they removed their prior assertion that divestment from DNB ASA is the "sole" source of Plaintiff's asserted injury. Doc. 26 at 7.

[5] *See generally California v. Texas*, 141 S. Ct. 2104 (2021) (acknowledging "pocketbook injur[ies]" may sufficiently show harm).

reduction in their financial interests in order to present an injury in fact. Courts in this Circuit have instead held, in the context of allegations that unlawful conduct could ultimately jeopardize or harm "future payments from a defined-benefit plan," that "a plaintiff might well be able to establish injury in fact by including…allegations that" the challenged conduct "created an appreciable risk" of future harm. *New Orleans ILA Pensioners Ass'n v. Bd. Of Trs.,* No. 07-6349, 2008 U.S. Dist. LEXIS 5343, at *9 (E.D. La. Jan. 23, 2008).[6] And, "as more than one court has found, the threat of future harm is sufficiently immediate to constitute a cognizable injury-in-fact for purposes of…standing." *Planned Parenthood Gulf Coast, Inc., v. Kliebert,* 141 F. Supp. 3d 604, 631 (M.D. La. 2015); *see also Comsat Corp. v. FCC,* 250 F.3d 931, 936 (5th Cir. 2001) ("A threatened injury satisfies the injury in fact requirement so long as that threat is real"); *Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cnty., Miss.,* 205 F.3d 265, 268 (5th Cir. 2000) (explaining that "the risk of injury may be founded on a likely and credible chain of events"). While a "truly uncertain potentiality" may deprive a litigant of standing, a "decent probability will confer it." *Planned Parenthood Gulf Coast, Inc.*, 141 F. Supp. 3d at 631 (internal quotations omitted). Section 808 creates this probability, and Plaintiff's Complaint sets forth a clear and credible chain of events

---

[6] In a four-justice dissent by Justice Sotomayor in 2020, the Supreme Court expressed doubt about the idea that plaintiffs in a defined benefit plan could not assert standing where they had not shown that their payments had "fluctuated with the value of the plan or because of the fiduciaries' good or bad investment decisions in the past." *Thole v. U.S. Bank N.A.,* 140 S. Ct. 1615, 1626 (2020) (Sotomayor, J., dissenting) (internal quotations omitted). Justice Sotomayor explained the error of the Court's reasoning, noting that "[t]he Court…holds that participants and beneficiaries in a defined-benefit plan have no stake in their plan's assets…. In other words, the Court treats beneficiaries as mere bystanders to their own pensions. That is wrong on several scores. For starters, it creates a paradox: in one breath, the Court determines that petitioners have no equitable or property interest' in their plan's assets… ; in another, the Court concedes that petitioners have an enforceable interest in receiving their monthly pension benefits…. Benefits paid from where? The plan's assets obviously. Precisely because petitioners have an interest in payments from their trust fund, they have an interest in the integrity of the assets from which those payments come."

connecting his injury to the challenged legislation.[7] Section 808's application to Plaintiff's vested financial benefits is not conjecture; it is reality. Section 808's plain language and purpose require divestment decisions based on factors with no relationship to financial outcomes. This too is not hypothetical. The connection between the relevant provisions of Section 808 and Plaintiff's own benefits is direct, actual and ongoing. Plaintiff need not assert a property interest in a particular asset of the funds, nor does he attempt this. His standing derives from his status as an individual whose financial interests face a current credible threat of injury, due to the promulgation of unlawful legislation motivated by political and not financial considerations.

Plaintiff's harm is not a "generalized grievance[] embodying his disagreement with a state policy[,]" as Defendants assert. Doc. 16 at 10. Plaintiff does not premise his claims on the mere fact of his status as a citizen of Texas or an individual with particular political beliefs, nor does he claim a right in one particular asset. He grounds his claim in his own clear interest in his financial property. *See Richards v. City of New Orleans,* Civil Action No. 95-1880, 1996 U.S. Dist. LEXIS 9720, at *13 (E.D. La. July 3, 1996) (explaining that an individual's pension fund is a "constitutionally protected" property interest). Although Defendants are correct that Plaintiff's claims do not involve allegations that he himself has been barred from participating in BDS activities, he need not do so.[8] He plainly alleges his interest in the administration of his pension

---

[7] Even Rep. King, the primary author of Section 808, and the General Counsel of the Texas Treasury Safekeeping Trust Company both recognize that ascertaining an exact dollar amount of future performance of funds is nearly impossible, and as with all investments, past performance does not guarantee future results. Testimony on HB 2189, located at https://tlchouse.granicus.com/MediaPlayer.php?view_id=46&clip_id=20036 (last visited July 20, 2021). Nonetheless, all relevant officials also recognize that returns under ERS defined contributions have been consistently below market rates. Shawn Mulcahy, *Overhaul to Texas state employee pension plan unveiled and quickly advanced by state Senate committee*, THE TEXAS TRIBUNE (Apr. 19, 2021), https://www.texastribune.org/2021/04/19/texas-senate-pension-overhaul/ .

[8] Not only is Plaintiff not required to assert his own personal beliefs in order to sustain this claim, but those beliefs add nothing to the legal calculus of the injury claimed here.

benefits, an interest not diminished by the fact that he has not alleged a specific dollar amount.[9] Plaintiff's injury arises from his financial interests being administered pursuant to legislation that can and has led to decisions not grounded in financial considerations. *See Lion Health Servs. v. Sebelius,* 689 F. Supp. 2d 849, 854-55 (N.D. Tex. 2010) (finding injury in fact regardless of whether plaintiff demonstrated actual financial harm, because "plaintiff would still be injured because the amount of [his financial interests] were calculated according to an unlawful regulation"). These injuries to constitutional rights suffice to "afford a plaintiff standing[,]" where, as here, he connects that injury to his own personal interests, and does not stand positioned as a mere observer. *Valley Forge Christian Coll.*, 454 U.S. at 485.

   *2.  Plaintiff has standing to bring his First Amendment and Establishment Clause claims*

   Defendants next contend that Plaintiff cannot assert any injury to his First Amendment free speech rights or rights pursuant to the Establishment Clause, because he does not claim that "*his* speech has been chilled or *his* ability to boycott has been deterred as a result of" Section 808. Doc. 16 at 10. The merits of Plaintiff's First Amendment and Establishment Clause claims are discussed below as to Defendants' 12(b)(6) motion and incorporated here by reference; as to standing, this contention regarding standing to bring these claims misses the nature of Plaintiff's Complaint. Section 808 constitutes impermissible viewpoint discrimination, a form of speech restriction that the Supreme Court labels "particularly pernicious[,]" because it occurs when the government singles out a particular perspective on a subject for unfavorable treatment. *R.A.V. v. St. Paul,* 505 U.S. 377, 395 (1992). Section 808 squarely represents viewpoint discrimination, because it penalizes a form of peaceful protest aimed at asserting the rights of the Palestinian people, while not taking similar action against other political viewpoints or methods of peaceful protest.

---

[9] Plaintiff's Complaint does point to the fact that, in recent years, the contribution requirements have increased in order to keep the fund solvent. Doc. 1 at ¶ 13.

Viewpoint discrimination focuses not on the viewpoint of individual plaintiffs, but on the government's act promulgating legislation penalizing a particular viewpoint, where the discrimination results in injury to a plaintiff. Plaintiff alleges injury resulting from Section 808's unconstitutional discrimination against a form of peaceful protest. Plaintiff alleges that "[a]s a result of [Section 808's] promulgation the individuals tasked with making decisions concerning Plaintiff's financial interests must consider" discriminatory criteria "rather than solely administering those interests with the goal of optimizing financial outcomes." Although free speech rights often arise as to individuals' own ability to express themselves, the doctrine is not as narrow as Defendants suggest. Courts routinely recognize standing where the plaintiff's own speech was not restricted, particularly where legislation affects First Amendment activities in an overly broad manner. The Ninth Circuit found standing where a plaintiff "though not alleging any First Amendment harm to himself—has incurred a financial injury." *Mothershed v. Justs. of the Sup. Ct.,* 410 F.3d 602, 610-11 (9th Cir. 2005); *see also Clark v. City of Lakewood,* 259 F.3d 996, 1007 (9th Cir. 2001) (finding "financial loss is a sufficient injury in fact" where the impact derived from a potentially improper ordinance, even though plaintiff's own speech rights were not limited); *see also Vill. of Schaumberg v. Citizens for a Better Env't.,* 444 U.S. 620, 634 (1980) (explaining that where an overly broad statute may inhibit protected speech, "courts are inclined to disregard the normal rule against permitting one whose own conduct" is unaffected from bringing a claim).

Defendants next rely on *Valley Forge* for the proposition that, in order to establish standing under the Establishment Clause, plaintiffs must identify a "personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the…consequence presumably produced by observation of conduct with which one disagrees." Doc. 16 at 11-12 (quoting 454 U.S. 485). Plaintiff does this. Plaintiff alleges that his harm stems not from the mere existence or observation of Section 808, but from the direct connection between that legislation and his existing

financial interests. The Fifth Circuit considered standing in Establishment Clause contexts on several occasions, and notes that "the concept of injury for standing purposes is particularly elusive in Establishment Clause cases." *Littlefield v. Forney Indep. Sch. Dist.,* 28 F.3d 275, 295 n. 31 (5th Cir. 2001). Although the mere existence of legislation or regulations that may violate the Establishment Clause is insufficient to support standing, the Fifth Circuit clarified that "personal exposure to an alleged Establishment Clause violation" that impairs a plaintiff's rights in some way is sufficient to confer standing. *Freedom from Religion Found. v. And,* No. H-17-881, 2018 U.S. Dist. LEXIS 239565, at \*11-15 (S.D. Tex. Jan 19, 2018); *cf. Doe v. Beaumont Indep. Sch. Dist.,* 240 F.3d 461, 466 (2001) (explaining that under *Valley Forge* standing cannot exist where plaintiffs have no relationship to the government action and no personalized interest other than seeing the law enforced). Here, Plaintiff does not merely complain about the existence of Section 808, nor does he complain of mere exposure to it. His Complaint articulates how the legislation affects his own personal pension benefits, and potentially (if not likely) harms him by its unconstitutional requirements. Doc. 1 at ¶¶ 42-46, 54-56, 65, 73-75, 103, 111.

   *3. Plaintiff has standing to bring a due process claim*

   Defendants next assert Plaintiff lacks standing on his due process claims due to "fail[ure] to identify the nature of any property or liberty interest of which *he* is deprived by ERS's decision to divest any particular asset[; and] Plaintiff has no interest or right in…any particular investment decision." Doc. 16 at 13. Defendants again misstate the nature of Plaintiff's claims. Plaintiff repeatedly identifies his interest in his own pension benefits. Doc. 1 at ¶¶ 43, 54-55, 65, 73-74, 94, 103, 108. And, Plaintiff does not rely on harm from any "particular divestment decision," nor does he claim "a right to any notice or hearing regarding individual divestment decisions[.]" *Id.* Plaintiff challenges the lawfulness and constitutionality of Section 808. *Id.* at 11-12 ("Under the Fifth Amendment's Due Process clause, Plaintiff is entitled to a right to be heard, and a meaningful

opportunity to respond, regarding…harm to…the property of his investments[;] Plaintiff has been afforded no such opportunity prior to the deprivation of his property interests that has occurred, and continues to occur, as a result of Section 808's requirements that those administering such interests unconstitutionally discriminate against certain companies, in contravention of their fiduciary duty to make decisions that optimize Plaintiff's financial outcomes"). Further, this lawsuit presents Plaintiff's *only* recourse to challenge the mismanagement of his pension benefits. As he describes, "[t]he stated requirement for state governmental entities of 'clear and convincing evidence' and involvement of both houses of the legislature, the attorney general and the comptroller, before anything less than absolute adherence to Section 808 creates an improper burden on the rights of Plaintiff and others similarly situated." *Id*. at ¶ 75. Finally, Section 808's language itself deprives individuals' right to bring suit for harm to property interests.[10]

4.  *Plaintiff has standing to bring his Commerce Clause claim*

Defendants' cursory section on Plaintiff's standing to bring a Commerce Clause claim merely reiterates their position that he has fails to show an injury. For the reasons set forth above and incorporated here, this assertion fails in this instance as well.

5.  *Plaintiff's injuries are capable of being redressed by a favorable decision*

An accurate reading of the harm set forth in Plaintiff's Complaint reveals the error in Defendants' assertion that his claims lack redressability. Plaintiff's injury arises solely from the promulgation of unconstitutional and unlawful legislation that creates the real and existing possibility of harm to his financial interests. A favorable declaration by this Court could eliminate

---

[10]  Section 808.004 of the Texas Government Code prohibits individuals from exercising any private right of action to challenge Section 808: "A person ... may not sue or pursue a private cause of action against [state entities, employees, officers, or contractors] for any claim or cause of action, including breach of fiduciary duty, or for violation of any constitutional, statutory, or regulatory requirement in connection with any action ... made or taken in connection with this chapter."

the harm and restore the relevant fiduciaries' obligations to administer the funds in a way that expressly prioritizes maximizing financial outcomes, not political preferences. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992) (explaining that redressability exists when there is a reasonable likelihood that the injury alleged with be redressed by a favorable decision).

## C.    Plaintiff Sufficiently States His Claims

Defendants assert that Plaintiff fails to sufficiently state his claims. Plaintiff incorporates all relevant discussions from the preceding sections which overlap with these arguments.

### 1. *First Amendment—Freedom of Speech*

For reasons similar to those discussed in the preceding section, Defendants' assertion that Plaintiff cannot state a claim under the First Amendment because "he fails to plead facts that *his* First Amendment rights have been violated" fails as a matter of law. Doc. 16 at 14. Defendants rely on the distinction between the facts of this case and those set forth by the plaintiffs in *Amawi v. Pflugerville ISD.* In *Amawi*, the plaintiffs challenged a Texas anti-BDS law that prohibited them from exercising their First Amendment right to boycott the State of Israel if the State contracted with them to provide goods or services. 373 F. Supp. 3d 717; *see* TEX. GOV. CODE § 2270.001 et seq. The *Amawi* case relates here because this Court recognized BDS protests as a form of protected speech, finding the challenged regulation constituted viewpoint and content-based discrimination. *Id.* at 761 (finding that denying a benefit by statute based on expression of First Amendment rights in supporting BDS required a higher showing than Texas had demonstrated, and denying the State's motion to dismiss because defendants were likely "liable under *Ex parte Young* for the constitutional injuries resulting from that enforcement"). The distinctions between Plaintiff's injury here and the exact one suffered by the plaintiffs in *Amawi* does not negate its relevance. Although *Amawi* sets forth one set of factual circumstances under which a First

Amendment challenge to anti-BDS legislation is appropriate, nothing in its holding requires this Court to limit its review of these challenges to purely identical facts.

At the motion to dismiss stage, plaintiffs need only plead enough facts to "give the defendant[s] fair notice of the plaintiff's claim and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 127 (2007). Plaintiff need only plead sufficient facts to raise a reasonable expectation that discovery could reveal evidence supporting his claim. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.,* 2017 U.S. Dist. LEXIS 130818, at *13-14 (N.D. Tex. Aug. 16, 2017). Here, Plaintiff does not merely provide a "formulaic recitation" of the elements of his asserted causes of action; he sets forth a detailed description of the bases upon which Section 808 is unconstitutional viewpoint discrimination, and clearly articulates the resulting particularized injury. Doc. 1 at ¶¶ 51-56. This more than satisfies the requirements of the law at this stage.

## 2. *First Amendment-Establishment Clause*

The question at the heart of an Establishment Clause claim is whether one religious denomination receives preferential treatment over another. *See Larson v. Valente,* 456 U.S. 228, 244 (1982). Defendants contend that this Court "is guided by the three-part test for Establishment Clause claims set forth in *Lemon v. Kurtzman"*, which sets forth the following three prong test: (1) government action must have a primary secular purpose, (2) it may not have the principal effect of advancing or inhibiting religion, and (3) it may not foster excessive entanglement with religion. Doc. 16 at 15 (citing 403 U.S. 602, 612-13 (1971)). The *Lemon* test, however, is not the only method by which courts evaluate Establishment Clause cases. "[T]he Supreme Court generally applies at least one of three tests under the Establishment Clause, the *Lemon* test, the endorsement test, and the coercion test." *Am. Legion v. Am. Humanist Ass'n,* 139 S. Ct. 2067, 2080-81 (2019); *see also Am. Humanist Ass'n v. McCarty,* 851 F.3d 521, 525 (5th Cir. 2017). To the extent that *Lemon* is relied upon, the Supreme Court and Fifth Circuit have both expressed serious doubts

about *Lemon's* continued application, noting as recently as 2019 that "[a]s Establishment Clause cases involving a great array of laws and practices came to the Court, it became more and more apparent that the *Lemon* test could not resolve them[,]" and pointing out that "the Supreme Court has observed that 'just two years after *Lemon* was decided, we noted the factors identified in *Lemon* serve as no more than helpful signposts,'" and "many of [the Supreme Court's] recent cases simply have not applied the *Lemon* test." *Am. Legion,* 139 S. Ct. at 2080-81; *Brown v. Collier,* 929 F.3d 218, 246-47 (5th Cir. 2019). This Court need not and should not rigidly adhere to the prongs of the *Lemon* test where they fail to fully comprehend the nature of an Establishment Clause claim.

Rather than focusing their argument on the three prongs of the *Lemon* test that Defendants urge this Court to follow, Defendants distinguish the facts of this case from those contained in *Hawaii v. Trump,* 241 F. Supp. 3d 1119, 1134 (D. Haw. 2017). Doc. 16 at 16. In *Hawaii,* the court refused to find that President Trump's travel ban affecting primarily Muslim majority countries could not constitute an Establishment Clause violation, where the President's own discriminatory rhetoric belied the facially neutral nature of the legislation. Defendants are correct that this case is not a mirror image of *Hawai'i v. Trump;* Plaintiff contends that it is relevant for the purpose of demonstrating that the facial neutrality of legislation is not the end of an Establishment Clause inquiry. The Representative who sponsored Section 808 plainly tied its promulgation to religion, and not just to "his own Christian faith" as Defendants purport. *See, e.g.,* Doc. 16 at 16. As set forth in Plaintiff's Complaint, Representative King explicitly stated that he "introduced the legislation because as a Christian he felt his religious heritage is linked to Israel and the Jewish people….and Texas has a large Jewish population and does a lot of business with Israel." Doc. 1 at ¶ 62. King, who was also the bill's primary author, made comments before the Texas House of Representatives Committee on State Affairs stating that he feels the legislation is "the right thing to do…whether you're Christian or Jewish, or whatever you are," once again expressly tying the

purportedly facially neutral provisions of Section 808 to religion.[11] And, many of the facts that Defendants fault Plaintiff for not setting forth in his Complaint are not plausibly available to Plaintiff until the discovery stage. Doc. 16 at 16 ("Plaintiff fails to set forth sufficient facts that religious preference or animus was part of the legislative process or considered by any other members when passing this bill"). Therefore, he requests that he be permitted the opportunity for discovery to determine these additional facts.

### 3. *Federal Due Process*

At the motion to dismiss stage, a plaintiff need only demonstrate the plausibility of his claim, based on the allegations contained in his Complaint; he need not yet "prove that []he will ultimately prevail" at trial. *See Bonillas v. Harlandale Indep. Sch. Dist.,* 832 F. Supp. 2d 729, 742 (W.D. Tex. 2011) ("[T]he question is the sufficiency of the allegations in the pleadings;" the plaintiff need not prove his entire case). Plaintiff's Complaint alleges his property interest in his pension benefits, and that those interests are subject to harm as a result of Section 808. As discussed above, the Texas Constitution requires that benefits be provided to employees, and Plaintiff's own contributions were mandatory. Thus, he does not claim merely an "abstract need or desire" related

---

[11] Prominent Texan politicians and policymakers have repeatedly commented tying the State's support of Israel to religion. In 2020, Governor Abbott tweeted "[t]oday I prayed at the Western Wall in Jerusalem that God will continue to bless Israel and God continue to strengthen the bond between Texas and Israel." Twitter, GregAbbott_TX, https://twitter.com/gregabbott_tx/status/1217868367169642497?lang=en (last visited April 8, 2021); *see also* Johnathan Tilove, *Patrick baptized, builds Texas business ties on first trip to Israel,* Austin-American Statesman, https://www.statesman.com/news/20160903/patrick-baptized-builds-texas-business-ties-on-first-trip-to-israel (last visited April 8, 2021) ("'Some people would say I wear my faith on my sleeve. I try not to, but if you look at my record in the Senate of putting 'In God We Trust' in the Senate (chamber), and 'under God' in the (Texas) pledge, and helping create the first seminary in a Texas prison — and I wrote a Christian book and a Christian film — it's very meaningful to me, and so it was just something I wanted to do,' Patrick said. The trip was organized by the Republican Lieutenant Governors Association and paid for by the State Government Leadership Foundation, a national conservative policy organization").

to his "property interest in a benefit protected by procedural due process." *Bd. of Regents v. Roth*, 408 U.S. 564, 566 (1972). His claim is firmly grounded in property which the Texas legislative scheme provides for his benefit and to which the State of Texas and TCDRS require him to contribute.

And, Plaintiff articulates that he has no other opportunity to challenge that injury, leaving the present lawsuit as his only recourse. The express provisions of Section 808 simultaneously require unconstitutional considerations in the administration of the funds and preclude individuals from challenging the harm to their financial interests that results. Defendants contend that Plaintiff cannot sustain a due process claim because he "clearly states in his Complaint that he did have the opportunity to make public comments before the ERS board." Doc. 16 at 17; *see also* Doc. 1 at ¶ 26. But Plaintiff's ability to voice his concerns before the board does not transform those communications into constitutionally adequate due process, and Defendants point to no authority for the contention that it does. These comments did not trigger any required action or evaluation, nor were they connected to any identifiable process or procedures that could lead to changes in the relevant statute. Plaintiff sufficiently shows (1) his personal property interest; (2) a harm to that interest; and (3) a lack of due process to address or remedy that harm. These allegations suffice at this early pre-discovery phase of litigation.

### 4. *Foreign Commerce Clause & Foreign Affairs*

Finally, Defendants contend that Plaintiff fails to allege a violation of the dormant Foreign Commerce Clause or the federal government's exclusive right to regulate foreign policy. "Power over external affairs is not shared with the States; it is vested in the national government exclusively," and as a result state laws that conflict with that authority are impermissible. *United States v. Pink,* 315 U.S. 203, 232 (1942). Defendants argue that Plaintiff has "failed to identify…how Chapter 808…encroaches on the federal government's authority to regulate foreign

affairs." Doc. 16 at 19. But as stated in Plaintiff's Complaint, Section 808 and all other similar legislation seek to influence foreign affairs and foreign policy by dissuading business entities in Texas and the United States, in addition to other nations, from participating in a social and political movement (BDS), and utilize the state's legislation to penalize those that do not comply with Texas' preferred foreign policy. Doc. 1 at ¶¶ 105-106. Legislation prohibiting investment in companies that do not support a particular nation, in this case Israel, clearly implicates foreign policy considerations and thus unconstitutionally infringes upon the federal government's exclusive authority in that arena.

## Conclusion

As this Court previously noted, multiple jurisdictions enacted similar legislation restricting boycotts of Israel.[12] But those numbers don't make the action right.  "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Amawi*, 373 F. Supp. 3d at 763, quoting *W. Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 642, (1943). A Texas statute again "threatens 'to suppress unpopular ideas' and 'manipulate the public debate through coercion rather than persuasion.'" *Id*. at 763-4, quoting *Turner Broadcasting Sys., Inc. v. Fed. Comm. Com'n,* 512 U.S. 622, 641 (1994). The context of the law does not change its intent, nor does it justify its effect.  Popular or not, the

---

[12] *See, e.g., Arkansas Times LP v. Waldrip*, No. 19-1378 (8th Cir. Feb. 12, 2021); *Amawi*., 373 F. Supp. 3d at 763; *Jordahl v. Brnovich,* 336 F. Supp. 3d 1016 (D. Ariz. 2018); *Koontz v. Watson,* 283 F. Supp. 3d 1007 (D. Kan. 2018). Courts found these laws to be unconstitutional restrictions on protected First Amendment rights under *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

freedoms protected by the Constitution prevail over any one political view.

For the reasons set forth above, Plaintiff Haseeb Abdullah respectfully requests that this Court deny Defendants' Motion to Dismiss in full. In the alternative, Plaintiff requests leave to amend his original Complaint order to address any deficiencies that this Court may identify.

Respectfully submitted,

/s/ Christina A. Jump
Christina A. Jump
Texas Bar No. 00795828
cjump@clcma.org
Alyssa F. Morrison
Texas Bar No. 24110135
amorrison@clcma.org
Constitutional Law Center for
Muslims in America ("CLCMA")
100 North Central Expy., Ste. 1010
Richardson, TX 75080
Phone: (972) 914-2507
Fax: (972) 692-7454

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2021, a true and correct copy of the foregoing Amended Response in Opposition to Defendants' Motions to Dismiss was served via the court's CM/ECF system to all counsel of record.

/s/ Christina A. Jump
Christina A. Jump
Counsel for Plaintiff