IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **HASEEB ABDULLAH,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:20-CV-1245-RP** |
| | § | |
| | § | |
| **KEN PAXTON, in his Official** | § | |
| **Capacity as Attorney General for** | § | |
| **the State of Texas, and GLEN** | § | |
| **HEGAR, in his Official Capacity** | § | |
| **as Comptroller of Public** | § | |
| **Accounts for the State of Texas** | § | |
| **and Director of the Texas** | § | |
| **Treasury Safekeeping Trust** | § | |
| **Company,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are State Defendants' Amended Motion to Dismiss, Dkt. 26;

Plaintiff Haseeb Abdullah's Amended Response, Dkt. 27; and State Defendants'

Reply, Dkt. 28. The District Court referred the Motion to the undersigned Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of

Appendix C of the Local Rules of the United States District Court for the Western

District of Texas.

## I.   BACKGROUND

This is a Declaratory Judgment Act[1] case. Plaintiff Haseeb Abdullah alleges violations of his constitutional rights. Abdullah is a beneficiary of the State of Texas Employee Retirement System ("ERS"). ERS manages benefits for State of Texas employees and retirees, including the ERS Retirement Trust Fund, which is a defined benefit plan providing eligible retirees with a fixed standard annuity payment calculated via a formula that is independent of the overall value of the ERS trust fund. While employed by the State of Texas, Abdullah contributed a percentage, determined by the Legislature, of his pre-tax monthly salary into his ERS retirement account. Although no longer a State employee, Abdullah has voluntarily maintained his retirement account with ERS instead of rolling it over into another retirement plan.

Chapter 808 of the Texas Government Code, enacted by House Bill 89 in 2017, requires ERS to divest fund assets from companies that boycott Israel as long as such divestment can be accomplished without harming the value of fund. Plaintiff brought this lawsuit against the State Defendants alleging the divestment requirements of Chapter 808 violate his rights under the United States Constitution. He asks this Court to declare Chapter 808 of the Texas Government Code unconstitutional.

---

[1] The Declaratory Judgment Act, which authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration," is merely a procedural device and does not create any substantive rights or causes of action. 28 U.S.C. § 2201(a); *Harris Cty., Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).

Abdullah filed his Original Complaint against Ken Paxton, Attorney General for the State of Texas; Glenn Hegar, Comptroller of Public Accounts for the State of Texas and Director of the Texas Treasury Safekeeping Trust Company; Porter Wilson, the Executive Director of ERS; and Amy Bishop, in her official capacity as Executive Director of the County & District Retirement System. Dkt. 1. Abdullah dropped his state law claims and his claims against Wilson and Bishop, filing a Rule 41(a)(2) motion dismissing them, Dkt. 19, which the Court granted. Hegar and Paxton remain parties and filed the Amended Motion to Dismiss now before the Court. They allege that Abdullah's claims should be dismissed because: (1) his claims are barred by sovereign immunity; (2) he lacks standing to bring any claim asserted in this lawsuit; and (3) he fails to state a claim for which relief can be granted. Dkt. 26, at 2.

## II.   LEGAL STANDARDS

Defendants move to dismiss Abdullah's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The undersigned finds this case is properly dismissed for lack of subject matter jurisdiction, so does not address the parties' Rule 12(b)(6) arguments.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or

constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## III.    DISCUSSION

### A.    Sovereign Immunity of the Comptroller

Defendants first argue that Abdullah's claims against Comptroller Hegar are barred by sovereign immunity. Defendants assert that state sovereign immunity precludes suits against state officials in their official capacities, *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), cert. denied sub nom. *City of Austin, Texas v. Paxton*, 141 S. Ct. 1047 (2021), and that the *Ex parte Young*, 209 U.S. 123 (1908), exception allowing "suits for prospective ... relief against state officials acting in violation of federal law," does not apply. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020).

Defendants assert that in order for the *Ex parte Young* exception to apply, state officials must have some connection to the state law's enforcement to ensure that the suit is not effectively a suit against the state itself. *Id*., at 400-01; *see also City of*

4

*Austin v. Paxton*, 943 F.3d at 998 (holding that when "conducting [the] *Ex parte Young* analysis, [the court] first consider[s] whether the plaintiff has named the proper defendant or defendants. Where a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, [the] *Young* analysis ends."). Defendants argue that it is not enough that the official have a "'general duty to see that the laws of the state are implemented.'" Dkt. 26 at 5 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). If the official sued is not statutorily tasked with enforcing the challenged law, then the requisite connection is absent. *Id.* And, a mere connection to a law's enforcement is not sufficient—the state officials must have taken some step to enforce the law. *Id.*

Defendants further maintain that Chapter 808 limits Hegar's duties to: (1) preparing and maintaining a list of companies that boycott Israel, § 808.051(a); (2) providing that list to the state governmental entities, *id.*; (3) updating the list, § 808.051(b); (4) filing the list with the legislature and the attorney general, § 808.051(c); and (5) posting the list on a publicly available website, *id.* Thus, they argue, while Hegar may be tasked with implementing certain provisions of Chapter 808, he is not charged with enforcing it. Additionally, Chapter 808 specifically includes an enforcement provision, which provides that "[t]he attorney general may bring any action necessary to enforce this chapter." Tex. Gov't Code § 808.102. Because, Defendants argue, the Comptroller does not take affirmative action to enforce Chapter 808, the *Ex parte Young* exception to sovereign immunity does not apply. Dkt. 26, at 6.

Abdullah responds that he meets the *Ex parte Young* requirements as his suit alleges a violation of federal law by a state official, and requests prospective injunctive relief. He asserts that Defendants overstate the law and that there need be "only a scintilla of enforcement by the relevant state official for enforcement to apply." *Langan v. Abbott*, 518 F. Supp. 3d 948, 953 (W.D. Tex. 2021). Abdullah argues that Chapter 808 delegates significant authority to the Comptroller. Tex. Gov't. Code § 808.051. He argues that Chapter 808 tasks the Comptroller with the creation, maintenance, and publication of the list of companies that boycott Israel, which triggers the investment/divestment decisions forming the subject of this suit. Additionally, under Section 808.053(c), if a listed "company ceases boycotting Israel" the Comptroller is tasked by the statute with removing the company from the list. Abdullah asserts that since removing a company from that list lifts any investment restrictions with it, this action qualifies as enforcing and maintaining the provisions of Section 808. *Id.* § 808.053(c).

Abdullah further points out that Section 808.056(c) provides that if a state governmental entity intends to cease divestment from a listed company, it must first "provide a written report to the comptroller … setting forth the reason and justification, supported by clear and convincing evidence." *Id.*; Dkt. 1. Abdullah argues that since the Comptroller is tasked with creating and promulgating the list of companies that should be divested from on the grounds that they engage in anti-Israel activity, removing the companies if they cease such participation, and assessing whether an entity should cease divestment from a company on the list,

6

these acts qualify as more than a "scintilla of enforcement" of Section 808, and *Ex parte Young* applies.

The undersigned finds Abdullah's argument unconvincing. The Texas Attorney General is specifically named as the enforcer of Chapter 808 in the statute. As stated in *City of Austin v. Paxton*, 943 F.3d at 998, "where a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, our *Young* analysis ends." *See Morris*, 739 F.3d at 745-46 (holding an inmate could not sue the Governor for the enactment of a health services fee when the statute in issue specifically tasked the TDCJ as responsible for its enforcement). Moreover, enjoining the Comptroller from its statutory tasks would not afford Abdullah the relief he seeks, which is to "restore the relevant fiduciaries' obligations to administer the funds in a way that expressly prioritizes maximizing financial outcomes, not political preferences." Dkt. 27, at 14-15; *see Mi Familia Vota v. Abbott*, 977 F.3d 461, 468 (5th Cir. 2020). Therefore *Ex parte Young* does not apply and Hegar is entitled to sovereign immunity.

## B.    Standing

Defendants next move to dismiss asserting that Abdullah lacks standing to bring his claims because he cannot establish the requisite injury for each claim.

Jurisdiction is "a threshold issue that must be resolved before any federal court reaches the merits of the case before it." *Perez v. U.S.*, 312 F.3d 191, 194 (5th Cir. 2002); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  Article III standing involves three primary considerations: (1) the plaintiff must demonstrate

that he has suffered an injury that is both concrete and particularized and actual or imminent (injury in fact); (2) that injury must be fairly traceable to the challenged conduct (causation); and (3) the injury must be capable of being redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (explaining that standing must be satisfied as to each particular injury). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

An injury is "concrete" if it is "real, and not abstract." *TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2204 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). Certain harms readily qualify as concrete injuries under Article III, including traditional tangible harms such as physical or monetary injury. *Id.* But a harm need not be tangible to be concrete; various intangible harms can meet this requirement, including violations of constitutional rights, such as freedom of speech or the free exercise of religion. *TransUnion*, 141 S. Ct. at 2204. A harm is particularized if the plaintiff has *personally* suffered the harm. *Lujan*, 504 U.S. at 560 n.1. Plaintiffs must demonstrate that the injuries alleged are "more than a generalized grievance." *See Valley Forge Christian Coll. v. Ams United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Finally, a harm is actual or imminent if the harm has happened or is sufficiently threatening, not merely if it may occur at some future time. *Lujan*, 504 U.S. at 564.

Abdullah brings the following constitutional claims: (1) violation of his First Amendment right to free speech; (2) violation of the Establishment Clause; (3) violation of the Due Process clauses of the Fifth[2] and Fourteenth Amendments; and (4) breach of the dormant Commerce Clause.

First, Defendants argue that Abdullah has failed to allege any injury to his ERS benefits upon which to base standing. Dkt. 26, at 8. Abdullah responds that he has standing to bring claims predicated on the impact that Chapter 808 has on the administration of his pension benefits. Dkt. 27, at 7.

Defendants make several arguments to support their claim that Abdullah has not suffered a financial injury from Chapter 808. First, they point out that Abdullah is entitled to the receipt of an annuity from the State. An annuity affords a beneficiary a fixed amount of retirement based upon a formula calculated by multiplying his average salary by years of service plus a statutory multiplier. Unlike a 401(k) or other market-based account, this number is unaffected by changes in the market. Second, Defendants note that Abdullah chose to leave his funds in ERS after his separation from the State, and that choice is optional. Abdullah could have withdrawn his funds from ERS and rolled them over into a qualifying account of his choosing, that does not have the divestment requirements of Chapter 808. Third, Defendants argue that Abdullah's claim that Chapter 808 "operate[s] to effectuate divestment decisions that

---

[2] The due process component of the Fifth Amendment applies only to federal actors. As there are no federal actors involved in this suit, the undersigned analyzes Abdullah's claims under the Fourteenth Amendment only. *See Blackburn v. City of Marshall*, 42 F.3d 925, 930 n. 3 (5th Cir. 1995).

9

go against sound financial decision-making and the advice of financial experts" is not

true. Chapter 808 explicitly provides that:

> (a) A state governmental entity may cease divesting from one or more listed
> companies only if clear and convincing evidence shows that:
>
>> (1) the state governmental entity has suffered or will suffer a loss in the
>> hypothetical value of all assets under management by the state
>> governmental entity as a result of having to divest from listed
>> companies under this chapter; or
>>
>> (2) an individual portfolio that uses a benchmark-aware strategy would
>> be subject to an aggregate expected deviation from its benchmark as
>> a result of having to divest from listed companies under this chapter.
>
> (b) A state governmental entity may cease divesting from a listed company as
> provided by this section only to the extent necessary to ensure that the state
> governmental entity does not suffer a loss in value or deviate from its
> benchmark as described by Subsection (a).

Tex. Govt. Code § 808.056. Defendants maintain that the plain language of Chapter

808 provides that protecting the overall value of the pension fund takes priority over

divestment pursuant to the statute. Defendants argue that Abdullah has not and

cannot show that prior or future divestment as regulated by the statute has or will

cause him financial harm. The undersigned agrees.

Abdullah responds that he need not show a tangible financial loss and that he

does not premise his claims on past financial harm. Instead, he argues "his injury is

ongoing and coterminous with the existence and application of Section 808." Dkt. 27,

at 8. He asserts that he need not set out a dollar amount to establish an injury in fact,

because he can establish a probability of future harm. *Id.* at 9 (citing *New Orleans

ILA Pensioners Ass'n v. Bd. Of Trs. of New Orleans Empr's Int'l Longshoremen's Ass'n

AFL-CIO Pension Fund*, No. 07-6349, 2008 WL 215654, at *3 (E.D. La. Jan. 24, 2008);

*Planned Parenthood Gulf Coast, Inc., v. Kliebert*, 141 F. Supp. 3d 604, 631 (M.D. La. 2015) aff'd sub nom. *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477 (5th Cir. 2016), opinion withdrawn and superseded, 862 F.3d 445 (5th Cir. 2017), and aff'd sub nom. *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017); *Comsat Corp. v. FCC*, 250 F.3d 931, 936 (5th Cir. 2001); *Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cnty., Miss.*, 205 F.3d 265, 268 (5th Cir. 2000)). Abdullah argues that his standing derives from his status as an individual whose financial interests face a credible threat of injury.

The undersigned finds that Abdullah has failed to establish a credible threat of injury, and the cases he cites do not support his argument.  In *New Orleans v. ILA Pensioners*, the court did not hold that a probability of *any* future harm in the context of a defined benefits plan is sufficient to confer standing. Instead, the court found that "a plaintiff might well be able to establish injury in fact by including well-pleaded allegations that imprudent or disloyal conduct created an appreciable risk that a fund will be unable to satisfy existing liabilities." *ILA Pensioners*, 2008 WL 215654, at *4. This is based upon the prior statement that, "participants do not have standing to sue on behalf of [their] [p]lan for losses caused by fiduciary breach, unless the participants can establish that the remaining pool of assets will be inadequate to pay for the plan's outstanding liabilities." *Id.*, at *3. In this case, Abdullah has not argued that Chapter 808 puts the entire ERS in jeopardy (or even his annuity in jeopardy), and thus this case is not persuasive.

Similarly, *Kliebert* is not on point. 141 F. Supp. 3d at 624-25. In *Kliebert*, Planned Parenthood and Medicaid recipients brought a Section 1983 action seeking a temporary restraining order and preliminary injunction preventing the Secretary of Louisiana Department of Health and Hospitals from terminating their Medicaid provider agreements, claiming a future impediment to services for Medicaid recipients and planned parenthood. The court found standing existed in that case because "an agency's prospective, not yet consummated, action will be found ripe for review if 'the scope of the controversy has been reduced to more manageable proportions ... by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.'" *Id.* (citing *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). Kliebert had threatened to terminate the agreements on prior occasions, and the court had found that the termination would harm the Medicaid recipients and Planned Parenthood. The court found that a "future injury" would establish standing if either "the injury is certainly impending" or "there is substantial risk that the harm will occur." *Kliebert*, 141 F. Supp. 3d at 624 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)).  In this case, Abdullah has not established a substantial risk of harm to him by the continuing application of Chapter 808 as he has not shown that his future benefits will be affected, and he has certainly not shown a harm that is immediately impending.

Abdullah's other cited cases similarly fail to support his claims. He cites *Comsat Corp. v. FCC*, 250 F.3d 931, 936 (5th Cir. 2001), for the proposition that a

threatened injury satisfies the injury-in-fact requirement so long as that threat is real, rather than speculative. However, as in *Comsat*, where the court found standing was not present because Comsat could not link its losses to the regulation in issue, Abdullah has failed to articulate more than a speculative financial injury caused by Section 808.  He cites *Prestage Farms*, 205 F.3d at 268, for the proposition that "the risk of injury may be founded on a likely and credible chain of events"; however, in that case the court found no standing existed because the party failed to show the challenged ordinance had a "concrete effect" on its business endeavors. The court stated, "[w]hile the risk of injury may be founded on a likely and credible chain of events, the injury must be 'certainly impending.' Federal courts consistently deny standing when claimed anticipated injury has not been shown to be more than uncertain potentiality." *Id.* In this case, any alleged injury is not "impending" any more than it has been at all times since the statute went into effect and qualifies as a "uncertain potentiality." Abdullah has not identified a "credible chain of events" resulting in a potential loss to him. A threatened future injury must be "real and immediate; not conjectural or hypothetical" in order to demonstrate Article III standing. *Lujan,* 504 U.S. at 559-61. Abdullah's claim of a future injury to his benefits, which are a sum certain, is not concrete—it is speculative and hypothetical.

Defendants further assert that Abdullah lacks standing because any harm he can show is not particularized to him. Dkt. 26, at 11. They argue that Abdullah's claims are no more than generalized grievances about state policy. *Id.* The undersigned agrees. Abdullah asserts that he grounds his claim on his property

interest in his pension fund.  Dkt. 27, at 10. However, the Supreme Court has held that a participant in a defined-benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999). Section 808.056 specifically provides that divestment should cease if it will cause a loss in the value of the assets under ERS management, thereby cancelling any impending harm caused by the statute. Abdullah is entitled to a set annuity and not a fluctuating amount based on the assets present in the ERS, and unless the assets in general are insufficient to support his annuity, he suffers no harm. Abdullah fails to establish an injury particularized to him.

As for Abdullah's First Amendment free speech claim, Defendants argue that divestment pursuant to Chapter 808 does not harm Abdullah's First Amendment rights because he has not pled a particularized injury.[3] Defendants point out that Abdullah does not state his connection to, belief in, or participation in the BDS[4] movement. Dkt. 26, at 11. He has not pled that his individual speech has been chilled or his ability to boycott has been impacted by Chapter 808. Dkt. 26, at 12.

An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S.at 560. That is, the plaintiff must have "a direct stake in the outcome." *See Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). To satisfy this

---

[3] An intangible interest, such as that of free speech, satisfies the concreteness requirement of standing. *See Spokeo*, 136 S. Ct. at 1549.

[4] The BDS movement refers to the movement to boycott, divest, and sanction Israel-related businesses, in response to Israel's occupation of Palestinian territory and treatment of Palestinian citizens and refugees.

injury-in-fact test, Abdullah must allege more than an injury to someone's concrete, cognizable interest; he must "be [himself] among the injured." *Id.* at 734-35; *see McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020). Abdullah has failed to allege any injury to himself or his ability to express himself. He is free to express his opinions about BDS without harm to him.

Moreover, subjective ideological interests are not enough to confer standing. *See Sierra Club,* 405 U.S. at 729-35. The United States' system of governance assigns the vindication of value preferences to the democratic political process, not the judicial process, *see Lujan*, 504 U.S. at 576, because limiting the right to sue to those most immediately affected "who have a direct stake in the outcome" prevents judicial review "at the behest of organizations who seek to do no more than vindicate their own value preferences," *Sierra Club*, 405 U.S. at 740.

Abdullah argues that Chapter 808 constitutes impermissible viewpoint discrimination because it penalizes a form of peaceful protest asserting the rights of the Palestinian people, while not taking similar action against other methods or views of peaceful protest. Dkt. 27, at 11. He asserts that he has "overbreadth standing" and cites cases in support. Dkt. 27, at 12; *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005) (finding that despite not asserting his First Amendment rights were violated, an attorney satisfied the requirements for overbreadth standing because he suffered a financial injury-in-fact and could be expected to pursue the First Amendment claim vigorously); *Clark v. City of Lakewood*, 259 F.3d 996, 1010-11 (9th Cir. 2001) (holding that the owner of an adult

entertainment establishment had overbreadth standing to pursue a First Amendment challenge against provisions of an ordinance that required the employees of such establishments to obtain a license because the licensing scheme—although not directly applicable to the owner—threatened his business' viability). The undersigned finds that the overbreadth doctrine is inapplicable, as Abdullah, unlike the litigants in the cases he cites, cannot establish he has suffered a financial harm. Therefore, Abdullah lacks standing to assert his First Amendment free speech claim against Defendants.

Similarly, Defendants argue that Abdullah has suffered no particularized injury with regard to his Establishment Clause claim because he has not been personally harmed by the divestment. Dkt. 26, at 12. Defendants assert that in an Establishment Clause case, plaintiffs must "identify [a] personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by the observation of conduct with which one disagrees." *Valley Forge,* 454 U.S. at 485-86. Abdullah responds that his harm "stems not from the mere existence or observation of Section 808, but from the direct connection between that legislation and his existing financial interests." Dkt. 27, at 13. As stated above, however, Abdullah has failed to plead an injury to his financial interests as a consequence of Section 808. Additionally, his overbreadth argument, which he applies in the context of both his First Amendment free speech and Establish Clause claims, fails for the reasons set forth above. Moreover, Adbullah alleges only an economic injury as the basis for his Establishment Clause claim, and

he has failed to plead the requirements to establish standing for third party claims, i.e., that he has a close relationship with a person who possesses the right, and there is a barrier to that person's ability to protect his or her own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). The undersigned finds that Abdullah does not have standing to bring an Establishment Clause claim.

Abdullah also alleges due process violations. Defendants assert that Abdullah has failed to identify a liberty or property as required to make out a due process claim. Dkt. 26, at 13-14. Defendants maintain that Abdullah has no property interest in how ERS manages retirement funds or in any particular investment decision, and thus does not have a right to due process regarding those decisions. *Id.* Abdullah again relies on his interest in his pension benefits and asserts he does not claim any harm from any particular investment decision. Dkt. 27, at 13.

Under the Constitution, a property interest cannot be taken without due process. To prevail on this type of due process claim, the plaintiffs must demonstrate: (1) that the claimed interest is a property interest protected by the Fourteenth Amendment; and (2) that the alleged loss of that interest amounts to a deprivation of due process of law. *See Blackburn*, 42 F.3d at 935. Property interests are not created by the Constitution but are "defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Abdullah does not point to a statute providing him with a property right in the management of the ERS.

Additionally, he has failed to plead a loss of any benefits based upon management of the ERS, nor can he, as his benefits are fixed, and the legislature has provided that if Abdullah's fixed benefits are in jeopardy, any divestiture negatively effecting those benefits shall cease.  Abdullah does not have standing to bring a due process claim, as he has not established the necessary injury.

Abdullah also pleads a claim under the Commerce Clause. Under the Commerce Clause, the federal government has the power to "[t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Under the dormant Commerce Clause, a judicial creation, "the states lack the power to impede this interstate commerce with their own regulations." *Dickerson v. Bailey*, 336 F.3d 388, 395 (5th Cir. 2003). The dormant Commerce Clause serves as "a substantive restriction on permissible state regulation of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991). The Fifth Circuit has held that "the only parties that have standing to bring a dormant Commerce Clause challenge are those who both engage in interstate commerce and can show that the ordinance at issue has adversely affected their commerce. *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 476 (5th Cir. 2013). Abdullah has pled neither of these requirements, and he has failed to plead Section 808's negative effect on his annuity. Accordingly, he lacks standing to bring a dormant Commerce Clause claim.

Defendants also argue that Abdullah has failed to adequately plead redressability. To establish redressability, a plaintiff must show that it is likely, as

opposed to merely speculative, that the alleged injury will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560-61.

Abdullah asserts that his "injury arises solely from the promulgation of unconstitutional and unlawful legislation that creates the real and existing possibility of harm to his financial interests. A favorable declaration by this Court could eliminate the harm and restore the relevant fiduciaries' obligations to administer the funds in a way that expressly prioritizes maximizing financial outcomes, not political preferences." Dkt. 27, at 14-15. However, a Declaratory Judgment that Section 808 is unconstitutional and enjoinment of its use would have no effect on Abdullah's financial interests or his ultimate annuity payments. Abdullah has failed to allege a harm to him that would be redressed by a finding that Section 808 violated his rights. He therefore does not have standing to bring this claim.

Courts have repeatedly held that a generalized grievance against allegedly illegal governmental conduct does not satisfy the standing requirements of Article III. *See, e.g.*, *United States v. Hays*, 515 U.S. 737, 743 (1995); *Lujan*, 504 U.S. at 573-77; *Allen v. Wright*, 468 U. S. 737, 754 (1984). The Court finds that Abdullah lacks the requisite standing to sue Defendants, and thus this Court lacks jurisdiction over his claims.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** State Defendants' Amended Motion to Dismiss, Dkt. 26, and **DISMISS** Abdullah's claims against Hegar and Paxton for lack of jurisdiction.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.   WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically pursuant to the CM/ECF procedures of this

District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

      **SIGNED** November 8, 2021.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE